IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nebraska Beef Limited,

Plaintiff,

v.

Wells Fargo Business Credit, Inc. f/k/a
Norwest Business Credit, Inc.,

Defendant.

CASE NO. 01-CV-2375 (PAM/JEL)

**PLAINTIFF'S BENCH BRIEF**

## INTRODUCTION

Plaintiff Nebraska Beef Ltd. ("Nebraska Beef"), submits this Bench Brief to help familiarize the Court with the factual background and the legal claims and defenses asserted by the parties. This lawsuit was commenced by Nebraska Beef to recover various "Overadvance fees" charged to it by Wells Fargo in connection with an Amended Agreement dated May 29, 1996. After both parties moved for summary judgment, the Court granted Wells Fargo's motion and dismissed Nebraska Beef's claims, and denied Nebraska Beef's summary judgment motion with respect to Wells Fargo's counterclaims. *Nebraska Beef Ltd. v. Wells Fargo Business Credit, Inc.*, Civ. No. 01-2375 (January 20, 2004). Thus, the only issues now before the Court are Wells Fargo's counterclaims.

## FACTS

The facts are quite familiar to the court based on its previous ruling on the cross-motions for summary judgment, and Nebraska Beef will limit its discussion to those issues set for trial.

On June 30, 1997, Wolf informed Hughes that Wells Fargo would impose the default interest rate under the Agreement for various covenant breaches effective beginning July 1, 1997. Wolf specifically informed Hughes that Wells Fargo was not imposing the default interest

rate under the Agreement for any periods prior to July 1, 1997. At no time prior to the counterclaim asserted in this litigation did Wells Fargo seek to impose the default interest rate for the period December 1, 1996 through July 1, 1997.

The alleged defaults under the Agreement did not relate to any failure by Nebraska Beef to make payments when due to Wells Fargo. Instead, the alleged defaults related only to Nebraska Beef's financial condition and profitability. For instance, on January 9, 1997, Wells Fargo informed Nebraska Beef that it was technically in "default" under various covenants included in the Agreement. Similarly, in May 1997, Wells Fargo claimed that Nebraska Beef was again in default of three covenants under the Agreement.

The Agreement allowed Wells Fargo to impose the default interest rate and default letter of credit fees. The Agreement states that "**During any Default Period**, the Lender may exercise any or all of the following rights and remedies . . . " and describes the various remedies available to Wells Fargo. (Agreement at 48, Section 8.2 (emphasis added)). The obligation to pay the default interest rate is found in Section 2.11, and states as follows:

> *Default Interest Rate*. **At any time during any Default Period, in the Lender's sole discretion** and without waiving any of its other rights and remedies, the principal of the Advances outstanding from time to time shall bear interest at the Default Rate, effective for any periods designated by the Lender from time to time during that Default Period.

((Agreement at 18, Section 2.11(c) (emphasis added)).

At no time did Wells Fargo inform Nebraska Beef that it was imposing the default letter of credit fees until the counterclaims asserted in this litigation. At no time during the period in which Nebraska Beef could have been construed as being in default under the terms of the Agreement did Wells Fargo inform Nebraska Beef that it would impose these default letter of credit fees.

Following Wells Fargo's refusal to extend credit to Nebraska Beef following the expiration of the credit facilities on September 30, 1997, Nebraska Beef obtained an agreement from NationsBank to provide financing to replace the Wells Fargo loan. Consequently, Nebraska Beef's debt to Wells Fargo was fully satisfied by this replacement financing provided by NationsBank on or about September 30, 1997. The financing paid by NationsBank to Wells Fargo fully satisfied all outstanding indebtedness. The amount certified as due and owing to retire the debt was $16,475,776.05, plus costs of $1,694.54. This amount did not include the default interest rate or the default letter of credit fees Wells Fargo now seeks to impose.

**LEGAL ANALYSIS**

Wells Fargo's Counterclaims seek recovery for two items under the Agreement: First is the accrued interest of $175,443.47 based on the allegation that a default interest rate applied, which was two percentage points higher than the regular contract rate, to the outstanding balance during the period of December 1, 1996 to June 30, 1997. Second is a claim based upon the default letter of credit fee applied to the aggregate amount that could be drawn on all issued and outstanding letters of credit while a default allegedly existed under the Agreement. Wells Fargo claims that Nebraska Beef was in default during the period from December 1, 1996 until October 6, 1997 and that during this period the increased default letter of credit fee would apply, amounting to $86,366.63. The total combined amount claimed in the counterclaim is $261,810.10.

It is clear that Wells Fargo merely asserted these claims, over four years after the loan was paid off, as trial strategy to seek a set off against Nebraska Beef's claims to recover the Overadvance fees. Wells Fargo has no legal right to recover these fees under the Agreement, and the doctrines of waiver, estoppel, laches, and accord and satisfaction preclude Wells Fargo from recovering them.

## A. WFBCI HAS NO CONTRACTUAL BASIS FOR CHARGING THE DEFAULT INTEREST RATE AFTER THE EVENTS OF DEFAULT WERE CURED:

Based on the language of the Agreement, if Wells Fargo intended to impose the default interest rate, it must have done so *during* the actual Default Period. Consequently, its claim for the default interest rate applied to the loan balance, sought for the first time over four years after the loan was fully satisfied and the relationship terminated, is not permitted.

The rights and remedies of the parties in an event of default under the Amended are contained in Section 8.2 of the Agreement. This section provides that the default interest rate is not automatic, but must be exercised by the lender, at its sole discretion, and that the periods designated by the lender to which the default interest rate would apply must be designated "during that default period." (Agreement Section 2.11(c). Consequently, its failure to impose the default interest rate during the alleged default period precludes its recovery on its counterclaims in this litigation.

It is important to observe that Nebraska Beef's alleged defaults under the Agreement did not relate to any failure by Nebraska Beef to make payments to Wells Fargo when due. Instead, the alleged defaults related only to Nebraska Beef's financial condition and profitability. Furthermore, Wells Fargo actually imposed the default interest rate upon Nebraska Beef's loan balance beginning as of July 1, 1997. According to Wells Fargo's own documents, it explicitly stated that it was not applying the default interest rate to the period prior to July 1, 1997.

At no time prior to asserting the counterclaims in this litigation, and more importantly prior to the retirement of the loan by the refinancing from NationsBank and the "cure" of any defaults, did Wells Fargo provide notice that it was imposing any such default interest rate.

B. WFBCI IS NOT PERMITTED TO RETROACTIVELY CHARGE THE DEFAULT LETTER OF CREDIT FEES AFTER THE DEFAULT HAS BEEN CURED:

Wells Fargo also claims entitlement to default letter of credit fees under the Agreement during the period from December 1, 1996 to June 30, 1997, when WFBCI claims Nebraska Beef was in default under the Agreement. For substantially the same reasons as set forth in the previous section, Wells Fargo is precluded from recovering these default letter of credit fees where it did not impose them during the actual period of default. The Agreement provides that Wells Fargo must impose these fees during an event of default, and not four years after the loan was fully satisfied and any alleged defaults were "cured" under the Agreement.

The Default Letter of Credit Fees are established under Section 2.12. Wells Fargo was permitted to only charge the default letter of credit fees during the actual period of default. Thus, its ability to charge the default letter of credit fees terminated once the default terminated. This is supported by the language in the applicable sections in the Agreement. With respect to the letter of credit fees, the increased fees of 3% is not automatic but is subject to the Wells Fargo's "sole discretion." As such, this provision is subject Section 8.2 which restricts the exercise of such discretion only "during any default period."

At no time during the period from December 1, 1996 to October 6, 1997, did Wells Fargo seek to impose the default letter of credit fees pursuant to Section 8.2 of the Agreement. Since Wells Fargo failed to impose the default letter of credit fees during the "default period", it has no legal right to recover these fees after the events of default have been cured under the Agreement. The Court should therefore grant Nebraska Beef's motion for summary judgment.

C. NEBRASKA BEEF'S AFFIRMATIVE DEFENSES:

Nebraska Beef has asserted various affirmative defenses which relate primarily to Wells Fargo's acceptance of a payoff for *all* of the indebtedness and liabilities of Nebraska Beef to

Wells Fargo. On September 30, 1997, Wells Fargo confirmed in a letter to NationsBank of Texas that it had "requested us to accept, from [NationsBank], **in full of all indebtedness and liabilities of Nebraska Beef, Ltd.** … owing as of September 30, 1997 … and to terminate our financing arrangement with and security interest in collateral of [Nebraska Beef]." Wells Fargo went on to state that it was "agreeable to doing so" provided that certain conditions relating to indemnification are met, none of which Wells Fargo claims were not satisfied by NationsBank. Consequently, the debt was fully satisfied, and Wells Fargo can not now claim these sums over four years after it accepted the amounts offered by Nebraska Beef in full satisfaction of "all indebtedness and liabilities."

**1. <u>Waiver:</u>**

By agreeing to and accepting the payoff from NationsBank in September 1997 as "payment of in full of all indebtedness and liabilities of Nebraska Beef," Wells Fargo waived any claim for the accrued interest and Default Letter of Credit Fees. Waiver is "a voluntary relinquishment of a known right." *Flaherty v. Independent Sch. Dist. No. 2144*, 577 N.W.2d 229, 232 (Minn. Ct. App. 1998) (quotation omitted), review denied (Minn. June 17, 1998). In *Engstrom v. Farmers & Bankers Life Ins. Co.*, 41 N.W.2d 422 (1950), the Minnesota Supreme Court defined waiver:

> The definition of a waiver most commonly accepted is that it is a voluntary relinquishment of a known right. Both intent and knowledge, actual or constructive, are essential elements.
>
> * * * * * *
>
> The question of waiver is largely one of intention. It need not be proved by express declaration or agreement, but may be inferred from acts and conduct not expressly waiving the right.

*Id.*, 41 N.W.2d at 424 (citations omitted). Wells Fargo intentionally and with knowledge waived its right to the accrued interest and Default Letter of Credit Fees.

**2. Estoppel:**

Wells Fargo's claims are also barred by the doctrine of equitable estoppel based upon its acceptance of the September 1997 payoff from NationsBank. A claim for equitable estoppel arises when

> one by his acts or representations, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts on [that belief] in such manner that if the former is permitted to deny the existence of such facts it will prejudice the latter.

*Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn. 1978) (quotation omitted). The Minnesota Supreme Court recently considered equitable estoppel, and described the elements as follows:

> 1. There must be conduct acts, language or silence amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. ... 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 775 (Minn. 2004) (quoting *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn. 1980)).

In September 1997 Wells Fargo was asked to agree that the financing to be provided by NationsBank would be accepted as "payment in full of all indebtedness" of Nebraska Beef to

Wells Fargo, and Wells Fargo stated that it was "agreeable" to that request. Thus, under the circumstances, Wells Fargo should be estopped from claiming that there was any debt still owed by Nebraska Beef following the payment of the sums provided by NationsBank.

**3. <u>Accord And Satisfaction:</u>**

The accord-and-satisfaction statute provides:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (b) . . . [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Minn. Stat. § 336.3-311 (2004).

In this case, there was an explicit accord and satisfaction, and that any claim for accrued interest under the default interest rate, and the accrued amounts under the Default Letter of Credit Fees, were discharged by the payment to Wells Fargo. The statement that the payoff amount was intended to satisfy "all indebtedness" was conspicuous, and the offer was made in good faith, and therefore an accord and satisfaction bars Wells Fargo's claims for both the accrued interest and the Default Letter of Credit Fees.

**4. <u>Laches:</u>**

Laches is an equitable doctrine which provides that, "when one sits on one's rights for too long a time, that person's claim should be estopped from continuing because it would be inequitable to require the defendant to fight the suit." *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). Under the present circumstances, the delay by Wells Fargo to assert the

counterclaims for the accrued interest and default letter of credit fees should not be countenanced, and the claims should be dismissed under the laches doctrine.

## DAMAGES

Wells Fargo asserted in its Counterclaim dated January 15, 2002, that it seeks to recover the amount of $261,810.10, plus prejudgment interest and all costs and attorneys' fees. Wells Fargo has recently stated that the current amount owed for the unpaid default interest rate and letter of credit fees is the amount of $526,175.59, which is an effective annualized interest rate of over 12%, rather than the statutory prejudgment interest rate. There is no provision that allows for the continued application of the Default Interest Rate, or any interest rate under the Agreement, when the agreement was terminated upon the payoff by NationsBank.

Regardless, the only interest rate that could reasonably be applied to any sum claimed to be due and owing by Wells Fargo is the prejudgment interest rate. See Minn. Stat. § 549.09. Under the prejudgment interest statute, unless otherwise provided by contract, interest prior to judgment is calculated from the time the claim is asserted, or demand is made, until judgment is entered at the prejudgment interest rate. In this case, there was no demand for the amounts Wells Fargo claims are owing in its counterclaim until asserted in the counterclaim itself on January 15, 2002. Thus, the interest, at the prejudgment interest rate, should be calculated from that date.

## CONCLUSION

For all the foregoing reasons, Wells Fargo has no valid claims against Nebraska Beef arising out of the Agreement.

Respectfully Submitted,
MOSS & BARNETT
A Professional Association

Dated: June 24, 2005.

By s/ J. Vincent Stevens
Mathew M. Meyer (#264416)
Mark B. Peterson (#14440X)
Kevin M. Busch (#134028)
J. Vincent Stevens (#325211)
90 South Seventh Street, Suite 4800
Minneapolis, MN 55402-4129
Telephone: (612) 347-0300
ATTORNEYS FOR PLAINTIFF

784937v1