IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nebraska Beef Limited,

Plaintiff,

v.

Wells Fargo Business Credit, Inc. f/k/a Norwest Business Credit, Inc.,

Defendant.

CASE NO. 01-CV-2375 (PAM/JEL)

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

The above-entitled matter came on for trial before the Honorable Joan N. Ericksen, Judge of the United States District Court, District of Minnesota, on July 5, 2005.

Mathew M. Meyer, Esq. appeared as counsel for and on behalf of the plaintiff. Charles F. Webber, Esq. appeared as counsel for and on behalf of the defendants.

Upon all the evidence adduced at the trial, the stipulated facts, the memoranda and proposed findings submitted by counsel, the arguments of counsel and upon all the proceedings herein, the Court does make the following Findings of Fact, Conclusions of Law and Order for Judgment.

**FINDINGS OF FACT**

1. From 1995 to 1997, Plaintiff Nebraska Beef and Defendant Wells Fargo Business Credit, Inc. ("Wells Fargo") were parties to a credit agreement, which they amended on several occasions. On May 29, 1996, they executed an Amended and Restated Credit and Security Agreement (Amended Agreement).

2. The Amended Agreement defined various circumstances which would be deemed "defaults," set forth in Section 8.1 of the Amended Agreement.

3. Beginning on December 1, 1996, Nebraska Beef was in default under the terms of the Amended Agreement related to Nebraska Beef's financial condition and profitability. The defaults did not relate to any failure by Nebraska Beef to make payments when due to Wells Fargo. This condition of default under the Amended Agreement remained until October 6, 1997 when Nebraska Beef paid off the loan through financing obtained from NationsBank of Texas, N.A. (NationsBank).

4. The Amended Agreement allowed Wells Fargo to impose the default interest rate and default letter of credit fees, stating that "**During any Default Period**, the Lender may exercise any or all of the following rights and remedies . . . " and describes the various remedies available to Wells Fargo. The obligation to pay the default interest rate is found in Section 2.11, and states as follows:

> *Default Interest Rate*. **At any time during any Default Period, in the Lender's sole discretion** and without waiving any of its other rights and remedies, the principal of the Advances outstanding from time to time shall bear interest at the Default Rate, effective for any periods designated by the Lender from time to time during that Default Period.

5. Effective on July 1, 1997, through the pay off of the loan on October 6, 1997, Wells Fargo exercised its right under the Amended Agreement and imposed the Default Interest Rate. However, Wells Fargo did not impose the Default Interest Rate for the period in which Nebraska Beef was in default prior to that time, from December 1, 1996 until June 30, 1997.

6. Wells Fargo refused to waive the default for the period from December 1, 1996 until June 30, 1997, but did not exercise its right to impose the Default Interest Rate during this period of time.

7. The Amended Agreement also provided that during any period of default Wells Fargo could, at its discretion, impose a Default Letter of Credit Fee, which was computed at the

annual rate of 3.0% of the aggregate amount that could be drawn on all issued and outstanding letters of credit at the time of calculation.

8. During the period Nebraska Beef was in default under the Amended Agreement from December 1, 1996 until the payoff of the loan on October 6, 1997, Wells Fargo did not impose the Default Letter of Credit Fees, but preserved its right to impose this fee under the terms of the Amended Agreement. Instead, Wells Fargo imposed the non-default letter of credit fee of 1.0%.

9. On June 30, 1997, Wells Fargo specifically informed Nebraska Beef that it was not imposing the default interest rate under the Agreement for any periods prior to July 1, 1997.

10. On or about September 30, 1997, Wells Fargo entered into a letter agreement with NationsBank for the payoff of the loans to Nebraska Beef. Wells Fargo explicitly agreed to accept the payoff amount offered by NationsBank, on Nebraska Beef's behalf, for "payment in full of all indebtedness and liabilities of Nebraska Beef, Ltd.,... owing as of Setpember 30, 1997..."

11. On or about October 6, 1997, Wells Fargo received payment pursuant to the letter agreement on Nebraska Beef's behalf.

12. At no time did Wells Fargo request, claim or otherwise demand any interest alleged to have accrued under the Default Interest Rate during the period from December 1, 1996 until June 30, 1997, or provide notice that it would impose the Default Interest Rate for this period, until asserting the counterclaim in this action on January 15, 2002.

13. At no time did Wells Fargo request, claim or otherwise demand any amounts alleged to have accrued as Default Letter of Credit Fees under the Amended Agreement for the period from December 1, 1996 until October 6, 1997, or provide notice that it would impose the

Default Letter of Credit Fees for this period, until asserting the counterclaim in this action on January 15, 2002.

14. Under the terms of the Amended Agreement, the parties' intent was that the remedies upon default, pursuant to the terms of Section 8.2, could be imposed only during the actual period that the default existed.

## CONCLUSIONS OF LAW

1. The Amended Agreement precludes Wells Fargo from imposing the Default Interest Rate or the Default Letter of Credit Fees for any period of default after the Default has been cured.

2. Wells Fargo effectively waived any right to pursue claims to recover the accrued interest based upon the Default Interest Rate and the Default Letter of Credit Fees due to its acceptance of the terms of the payoff proposal from Nebraska Beef and NationsBank.

3. Wells Fargo is estopped from pursuing any claims to recover the accrued interest based upon the Default Interest Rate and the Default Letter of Credit Fees due to its acceptance of the terms of the payoff proposal from Nebraska Beef and NationsBank.

4. Wells Fargo is barred, under the doctrine of accord and satisfaction, from pursuing any claims to recover the accrued interest based upon the Default Interest Rate and the Default Letter of Credit Fees due to its acceptance of the terms of the payoff proposal from Nebraska Beef and NationsBank.

5. Wells Fargo is barred, under the doctrine of laches, from pursuing any claims to recover the accrued interest based upon the Default Interest Rate and the Default Letter of Credit Fees due to its failure to claim any amounts due under the Amended Agreement until asserting such claims in its counterclaims on January 25, 2002.

6. Under the terms of the Amended Agreement, Wells Fargo is precluded from imposing the Default Interest Rate after any alleged defaults have been cured by the payoff by NationsBank in or about September 1997.

7. Under the terms of the Amended Agreement, Wells Fargo is precluded from imposing the Default Letter of Credit Fees after any alleged defaults have been cured by the payoff by NationsBank in or about September 1997.

Based upon the following Findings of Facts and Conclusions of Law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Wells Fargo's counterclaim for the Default Interest Rate and Default Letter of Credit Fees under the Amended Agreement from December 1, 1996 through June 30, 1997 is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Dated: June 24, 2005

Honorable Joan N. Ericksen
Judge of District Court