**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Nebraska Beef Limited,

Plaintiff,

vs.

Wells Fargo Business Credit, Inc., f/k/a Norwest Business Credit, Inc.,

Defendant.

Civil No. 01-CV-2375 JNE/JGL

**WELLS FARGO's MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**

## INTRODUCTION

The parties agreed to settle this case – twice, in fact. Both times Nebraska Beef tried to scuttle the settlement after agreeing to it. That tactic worked once. It should not work again.

On August 19, Wells Fargo sent a draft settlement agreement to Nebraska Beef's counsel, with a request that he confirm that it was acceptable. Nebraska Beef's counsel replied on August 26, and his reply was unequivocal: "Your draft settlement agreement is acceptable. * * * I am having the client sign two originals. . . . As soon as I receive them, I will forward them to you." Despite this, Nebraska Beef has refused to execute the settlement documents.

The parties have an agreement – a written one, no less – and it is enforceable. Wells Fargo therefore asks the Court to implement the settlement according to the terms set forth in the written document to which both parties have agreed in full.

## FACTS

Wells Fargo believed that this case had been settled at a June 27, 2005 settlement conference before then-Chief Magistrate Judge Lebedoff. (Declaration of Charles F. Webber, dated October 17, 2005, at ¶ 2 ("Webber Decl.").) One of the terms of the settlement was that

the parties would stipulate that the Court could certify for immediate appeal under Fed. R. Civ. P. 54(b) the Court's January 20, 2004 Order granting summary judgment to Wells Fargo on all of Nebraska Beef's claims in this case, so that Nebraska Beef could pursue an immediate appeal without waiting for entry of judgment on Wells Fargo's counterclaim against Nebraska Beef. (*Id.*) The parties also agreed that if Nebraska Beef's appeal was not successful, Nebraska Beef would pay a certain amount of money to Wells Fargo in exchange for Wells Fargo's dismissal of its counterclaim against Nebraska Beef, which would finally dispose of all of the claims in this case and allow the Court to close the case. (*Id.*)

The parties did not read the settlement terms into the record in June; they told Magistrate Judge Lebedoff that it was not necessary. (Webber Decl. at ¶ 2.) That turned out to have been a mistake, for Nebraska Beef subsequently claimed that it did not share Wells Fargo's understanding of the matters that were agreed to before Chief Magistrate Judge Lebedoff, and refused to approve Wells Fargo's subsequent draft of a settlement agreement. (Webber Decl. at ¶ 3.)

After additional negotiation, the parties reached a new agreement. Many of the terms were the same as the parties had agreed to in June, including the provision for a stipulation to the Court entering a Rule 54(b) certification of its January 2004 summary judgment order in order that Nebraska Beef could pursue an immediate appeal of that order, and the provision that if Nebraska Beef's appeal was unsuccessful Nebraska Beef would pay money to Wells Fargo in exchange for dismissal of the pending counterclaim. Wells Fargo drafted a new Settlement Agreement and Mutual Release and associated exhibits ("Settlement Agreement") and sent them to Nebraska Beef's counsel on August 19, along with a request that counsel "confirm that this is acceptable." (Webber Decl. at ¶ 4 & Exs. 1 & 2 ("Webber Decl.").) Nebraska Beef's counsel

responded one week later, announcing: "Your draft settlement agreement is acceptable." (Webber Decl. at Ex. 1.) Counsel added: "I am having the client sign two originals . . . . As soon as I receive them, I will forward them to you." (*Id.*)

Since then, there has been only silence from Nebraska Beef. After receiving a call from Court personnel inquiring about the status of the settlement, Wells Fargo's counsel contacted Nebraska Beef's counsel to ask about the delay in getting the Settlement Agreement signed. (Webber Decl. at ¶ 5.) Nebraska Beef's counsel said that the papers were on his client's desk, and that he would call his client to ask about the status. (*Id.*) Nebraska Beef's counsel did not indicate that there was any disagreement about the terms of the Settlement Agreement or that there was any other problem that would prevent the settlement from being finalized. (*Id.*) Wells Fargo's counsel never heard anything more from Nebraska Beef's counsel about the matter. (*Id.*)

On October 11, Wells Fargo's counsel sent Nebraska Beef's counsel by facsimile and mail a letter asking for a signed Settlement Agreement by Friday, October 14, and stating that Wells Fargo would bring the current motion if Nebraska Beef refused to execute the papers. (Webber Decl. at ¶ 6 & Ex. 3.) Wells Fargo's counsel received no signed papers and no other communication from Nebraska Beef's counsel by October 14, so this motion followed. (Webber Decl. at ¶ 6.)

## DISCUSSION

It is well-established that courts in the Eighth Circuit encourage settlement agreements and will enforce such agreements absent a strong affirmative showing that they should not be enforced. *See, e.g.*, *Justine Realty Co. v. American Nat. Can. Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1372-73 (8th Cir. 1985). And Minnesota, whose substantive law governs the determination of whether a settlement agreement has been

reached in this case (*see Sheng v. Starkey Laboratories, Inc.*, 117 F.3d 1081, 1083 n. 1 (8th Cir. 1997)), follows the same policy. *See Beach v. Anderson*, 417 N.W.2d 709, 711-12 (Minn. App. 1988) ("[s]ettling suits without trial is greatly favored, and such agreements will not lightly be set aside").

Under Minnesota law, settlement of a lawsuit is contractual in nature, and an enforceable settlement agreement requires a definite offer and acceptance that demonstrates a meeting of the minds on the essential terms of the deal. *Sheng*, 117 F.3d at 1083 (citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971)); *see also Sabri v. Sabri*, 2000 WL 1051970, at *1 (Minn. App. Aug. 1, 2000) (citing *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963)). As with other contracts, "[a] settlement need not be reduced to a signed writing . . . so long as the parties have orally agreed to the settlement." *In re AFSCME Council 96*, 1998 WL 73140, at *2 (Minn. App. Feb. 24, 1998) (citing *Johnson v. Stizmann*, 413 N.W.2d 541, 544 (Minn. App. 1987)).

When, as here, the underlying facts surrounding the settlement agreement are undisputed, "the existence of a contract is a question of law" for the Court to decide. *TNT Properties, Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 100 (Minn. App. 2004).

It is well settled under Minnesota law that a court has the inherent power to summarily enforce a settlement agreement between the parties. *Simmons, Inc. v. Koronis Parts, Inc.*, 2002 WL 1347401, at *2 (D. Minn. June 18, 2000) (Montgomery, J.) (citing *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995)); *Jallen*, 119 N.W.2d at 743. Settlement agreements are enforceable in Minnesota so long as the parties reach agreement on the essential terms of the deal, even if the agreement is not in writing. *See e.g., Ghostley v. Hetland*, 204 N.W.2d 821, 823 (Minn. 1973); *Sheng v. Starkey Laboratories, Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997), citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971), *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49

(Minn. App. 1992), and *Worthy*, 756 F.2d at 1373. "[P]arties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous." *Worthy*, 756 F.2d at 1373, citing *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983.)

This case is an even easier one for enforcement of the settlement agreement than most of the cases cited above. Parties often seek to enforce unwritten settlement agreements, which requires the Court to decide who's right in the inevitable war over who said what to whom and when. In this case, by contrast, everything that is necessary to the Court's decision is <u>in writing</u>, and it is frightfully simple. Wells Fargo sent a draft settlement agreement to Nebraska Beef's counsel on August 19, asking him to "confirm that this is acceptable." (Webber Decl. Ex. 1.) One week later, Nebraska Beef's counsel announced: "Your draft settlement agreement is acceptable." (*Id.*) Nebraska Beef's counsel went on to state:

> I am having the client sign two originals, and have asked that he return them to me as soon as possible so that we can proceed with the certification and appeal. As soon as I receive them, I will forward them to you.

(*Id.*)[1]

There is no doubt that Wells Fargo's written offer of a settlement (*i.e.*, transmittal of a draft settlement agreement with a request to "confirm that this is acceptable") followed by the statement from Nebraska Beef's counsel that "[y]our draft settlement agreement is acceptable" constitutes an enforceable agreement.[2] *Sheng*, 117 F.3d at 1083; *Ryan*, 193 N.W.2d at 297;

---

[1] After announcing that "[the] draft settlement agreement is acceptable," Nebraska Beef's counsel asked for assurance that amount of a payment potentially due from Nebraska Beef in the future would be verified "if that amount becomes payable." (Webber Decl. Ex. 1.) Wells Fargo gave that assurance within 70 minutes. (*Id.*)

[2] It has been established since time immemorial that "[t]he attorney is the agent of his client." *Rogers v. The Marshal*, 68 U.S. 644, 651 (1863); *see also Hoppe v. Klapperich*, 28 N.W.2d 780, 791 (Minn. 1947).

*Jallen*, 119 N.W.2d at 743; *Sabri*, 2000 WL 1051970 at *1. The fact that documents were not formally executed does not matter because "no one declared an intention not to be bound until the signing of the formal agreement." *TNT Properties, Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 100 (Minn. App. 2004) (affirming enforcement of settlement agreement despite lack of formal execution). Thus, the Court should enforce that agreement as written, despite the fact that Nebraska Beef (apparently) refuses to formally sign the agreement.

In order to enforce the Settlement Agreement, the Court need do only two things. **First**, the Court should order that the terms of the Settlement Agreement are valid and binding on the parties. **Second**, the Court should enter an order containing the provisions of the Order of Certification Under Rule 54(b) that is part of Exhibit 1 to the Settlement Agreement, to which the parties agreed to stipulate in the Settlement Agreement. Such orders will implement the terms of the Settlement Agreement and allow Nebraska Beef to pursue an appeal from this Court's summary judgment order of January 20, 2004.

## CONCLUSION

The Court should implement the terms of the written settlement agreement, to which both parties agreed in writing. Therefore, Wells Fargo respectfully asks the Court to order that the terms of the Settlement Agreement are binding, and to certify for immediate appeal under Fed. R. Civ. P. 54(b) this Court's Order of January 20, 2004.

Dated: October 17, 2005

**FAEGRE & BENSON LLP**

s/ Charles F. Webber

Charles F. Webber (#215247)
Erik Girvan (#320079)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Attorneys for Defendant
Wells Fargo Bank, N.A.,
successor by merger to
Wells Fargo Business Credit, Inc.,
f/k/a Norwest Business Credit, Inc.

M2:20748558.01