**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Nebraska Beef Limited,

Plaintiff,

vs.

Wells Fargo Business Credit, Inc., f/k/a Norwest Business Credit, Inc.,

Defendant.

Case No. 01-CV-2375 (JNE/FLN)

**WELLS FARGO's MEMORANDUM IN SUPPORT OF SECOND MOTION TO ENFORCE SETTLEMENT AGREEMENT**

## INTRODUCTION

To call Nebraska Beef's conduct in this case "obstinate" would be an understatement. Nebraska Beef agreed to a settlement with Wells Fargo in 2005, and then backed out of it. The parties renegotiated the agreement, and reached a new agreement. Nebraska Beef tried to back out of that agreement too, which prompted Wells Fargo to file a motion to enforce the settlement agreement on October 17, 2005. Only after Wells Fargo filed that motion did Nebraska Beef finally execute the written Settlement Agreement and Mutual Release ("Settlement Agreement") to which the parties had agreed.

The Settlement Agreement provided that Nebraska Beef could appeal to the Eighth Circuit from this Court's January 20, 2004, summary judgment in favor of Wells Fargo on Nebraska Beef's claims in this case. Nebraska Beef agreed that if the Eighth Circuit affirmed this Court's summary-judgment decision, it would "pay to Wells Fargo: (i) $102,997.12, plus (ii) all costs, expenses, and attorneys' fees incurred by Wells Fargo

relating to the appeal, within 10 days of the date that Wells Fargo delivers a statement of those costs, expenses, and attorneys' fees to Nebraska Beef or its counsel." (App. 2.)[1]

On January 4, 2007, Wells Fargo delivered to Nebraska Beef's counsel a statement of the costs, expenses, and attorneys' fees that it incurred on appeal, which totaled $15,725.43. Nebraska Beef's payment of that amount plus $102,997.12 (a total of $118,722.55) was due on January 15, 2007. Nebraska Beef's response has been silent non-payment.

Nebraska Beef apparently refuses to honor its obligations to Wells Fargo unless this Court requires Nebraska Beef to do so. Wells Fargo therefore respectfully asks the Court to do so. The Court should order Nebraska Beef to pay Wells Fargo $118,722.55 within seven calendar days of the Court's order, and should provide that any failure to obey the order will constitute contempt of court that is punishable by monetary sanctions.

## FACTS

Some of the history of the settlement of this case is covered in Wells Fargo's Memorandum in Support of Motion to Enforce Settlement Agreement, dated October 17, 2005. (Docket No. 43.) For the Court's convenience, Wells Fargo will summarize the relevant portions of that history in this memorandum.

Wells Fargo believed that this case had been settled at a June 27, 2005, settlement conference before then-Chief Magistrate Judge Lebedoff. (Declaration of Charles F. Webber, dated October 17, 2005, at ¶ 2 ("Webber Decl.") (Docket No. 44).) The parties

[1] All citations in this memorandum to "App. ___" are to the exhibit appendix that accompanies this memorandum.

did not read the settlement terms into the record; they told Magistrate Judge Lebedoff that it was not necessary. (*Id.* at ¶ 2.) That turned out to have been a mistake, for Nebraska Beef subsequently claimed that it did not share Wells Fargo's understanding of the matters that were agreed to before Chief Magistrate Judge Lebedoff, and refused to approve Wells Fargo's subsequent draft of a settlement agreement. (*Id.* at ¶ 3.) Rather than move to enforce the settlement, Wells Fargo negotiated with Nebraska Beef to resolve the dispute.

The additional negotiation produced a revised agreement. Many of the terms were the same as the parties had agreed to in June of 2005. Wells Fargo drafted a new Settlement Agreement and Mutual Release and associated exhibits and sent them to Nebraska Beef's counsel on August 19, along with a request that counsel "confirm that this is acceptable." (Webber Decl. at ¶ 4 & Exs. 1 & 2.) Nebraska Beef's counsel responded one week later, announcing: "Your draft settlement agreement is acceptable." (Webber Decl. at Ex. 1.) Counsel added: "I am having the client sign two originals . . . . As soon as I receive them, I will forward them to you." (*Id.*)

Weeks passed with no signed original settlement document from Nebraska Beef. Upon inquiry, Nebraska Beef's counsel told Wells Fargo's counsel that the papers were on his client's desk, and that he would call his client to ask about the status. (Webber Decl. at ¶ 5.) Nebraska Beef's counsel did not indicate that there was any disagreement about the terms of the Settlement Agreement or that there was any other problem that would prevent the settlement from being finalized. (*Id.*) Wells Fargo's counsel never heard anything more from Nebraska Beef's counsel about the matter. (*Id.*)

On October 17, 2005, Wells Fargo filed a motion to enforce the settlement. (Docket No. 41.) Nebraska Beef's local counsel responded by asking to withdraw. (Docket No. 46.) Wells Fargo did not object to the withdrawal. (Docket No. 53.) Nebraska Beef's lead counsel in Nebraska then asked Wells Fargo to continue the hearing on the motion to enforce the settlement, and Wells Fargo agreed to move it to November 28, 2005. (Docket No. 54.)

Nebraska Beef did not respond to Wells Fargo's motion to enforce the settlement agreement. But on the November 28 hearing date, Nebraska Beef finally delivered to Wells Fargo an executed Settlement Agreement. (*See* App. 1-7.)

Under the Settlement Agreement, Wells Fargo agreed that Nebraska Beef could pursue an immediate appeal of the Court's summary-judgment order in favor of Wells Fargo on Nebraska Beef's claims in this case, subject to the Court's willingness to enter judgment on that order under Rule 54(b), as the order could not otherwise be appealed because Wells Fargo's counterclaim remained pending. (App. 1.) The Settlement Agreement went on to provide:

> If Nebraska Beef files a timely appeal of the Summary Judgment Order, and . . . the Eighth Circuit affirms the Summary Judgment Order, then . . . Nebraska Beef shall pay to Wells Fargo: (i) $102,997.12, plus (ii) all costs, expenses, and attorneys' fees incurred by Wells Fargo relating to the appeal, within 10 days of the date that Wells Fargo delivers a statement of those costs, expenses, and attorneys' fees to Nebraska Beef or its counsel. . . ."

(App. 2.) Once Wells Fargo received the money, it would stipulate to the dismissal of its counterclaim, and this case would be fully and finally resolved. (*Id.*)

This Court entered judgment on the summary-judgment order on December 5, 2005. (Docket No. 57.) Nebraska Beef filed a timely appeal on January 4, 2006. (Docket No. 62.)

On December 11, 2006, the Eighth Circuit issued its opinion affirming this Court's summary-judgment order in its entirety. *Nebraska Beef, Ltd. v. Wells Fargo Business Credit, Inc.*, 470 F.3d 1249 (8th Cir. 2006) (*see also* Docket No. 69). Nebraska Beef did not seek rehearing or certiorari, and the Eighth Circuit's mandate issued on January 17, 2007. (Docket No. 70.)

On January 4, 2007, Wells Fargo sent to Nebraska Beef's counsel by facsimile and mail Wells Fargo's Statement of Costs, Expenses, and Attorneys' Fees Incurred on Appeal. (App. 8-15.) The cover letter explained that the costs, expenses, and attorneys' fees that Wells Fargo incurred on appeal totaled $15,725.43, so that the total amount due from Nebraska Beef under the Settlement Agreement was $118,722.55. (App. 8.) The letter also stated that the payment was due on January 15, 2007, which was 11 days[2] after "the date that Wells Fargo delivers a statement of those costs, expenses, and attorneys' fees to Nebraska Beef or its counsel," as provided by the Settlement Agreement. (App. 2, 8.)

To date, Wells Fargo has not received the required payment from Nebraska Beef, and Nebraska Beef has made no contact with Wells Fargo regarding the payment. (Second Declaration of Charles F. Webber, dated January 23, 2007, at ¶ 2 ("Second

---

[2] Wells Fargo allowed an extra day because the tenth day after delivery of its statement of costs and fees fell on a Sunday.

Webber Decl.").) Even if Nebraska Beef had sent the required payment by mail from Nebraska on the January 15 due date, it should have arrived in Minneapolis by now, as 8 days have passed since the payment was due.

## **DISCUSSION**

It is well established in the Eighth Circuit that courts will enforce settlement agreements absent a strong affirmative showing that they should not be enforced. *See, e.g.*, *Justine Realty Co. v. American Nat. Can. Co.*, 976 F.2d 385, 391 (8th Cir. 1992); *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1372-73 (8th Cir. 1985). Minnesota state courts follow the same policy. *See Beach v. Anderson*, 417 N.W.2d 709, 711-12 (Minn. App. 1988) ("[s]ettling suits without trial is greatly favored, and such agreements will not lightly be set aside"). It is also well settled that this Court has the inherent power to summarily enforce a settlement agreement between the parties. *Simmons, Inc. v. Koronis Parts, Inc.*, 2002 WL 1347401, at *2 (D. Minn. June 18, 2000) (Montgomery, J.) (citing *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995)); *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963). "[P]arties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous." *Worthy*, 756 F.2d at 1373, citing *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983).

This case is an even easier one for enforcement of the settlement agreement than most of the cases cited above, which deal with <u>oral</u> settlement agreements that require a court to decide who's right in the inevitable war over who said what to whom and when. In this case, by contrast, everything that is necessary to the Court's decision is <u>in writing</u>, and is <u>signed</u> by Nebraska Beef. The executed Settlement Agreement provides that once

the Eighth Circuit affirmed the Court's summary-judgment order on December 11, 2005, Nebraska Beef was required to "pay to Wells Fargo: (i) $102,997.12, plus (ii) all costs, expenses, and attorneys' fees incurred by Wells Fargo relating to the appeal, within 10 days of the date that Wells Fargo delivers a statement of those costs, expenses, and attorneys' fees to Nebraska Beef or its counsel." (App. 2.) It is undisputed that Wells Fargo delivered its statement of costs, expenses, and attorneys' fees incurred on appeal on January 4, 2007. (App. 8-14.) That gave Nebraska Beef 10 days to make the required payment of $118,722.55. It is now 19 days later, and Nebraska Beef has made no payment, and has not even contacted Wells Fargo regarding the payment. (Second Webber Decl. at ¶2.) Nebraska Beef has no conceivable defense to paying the amount that the Settlement Agreement requires.

It is evident that Nebraska Beef intends to ignore its payment obligation under the Settlement Agreement until it is forced to honor its obligation. This is regrettable, as it forces Wells Fargo to impose on the Court to compel Nebraska Beef to do what it should have done voluntarily and without intrusion on the Court's time.

Wells Fargo respectfully asks the Court to enforce the parties' written Settlement Agreement in this case by ordering Nebraska Beef to deliver (not just mail) to Wells Fargo a total of $118,722.55 within seven days after entry of the Court's order requiring it. Wells Fargo also respectfully asks the Court to order that any failure by Nebraska Beef to comply with the Court's order will constitute a contempt of Court that will be punishable by an order requiring Nebraska Beef to pay Wells Fargo's costs, expenses, and attorneys' fees incurred in bringing this motion and any subsequent motions to

enforce Nebraska Beef's obligations under the Settlement Agreement, plus a daily fine (in an amount to be set by the Court in its discretion; Wells Fargo suggests the modest sum of $500 per day) that will cease when Nebraska Beef complies with this Court's order. *See* 18 U.S.C. § 401 (setting out contempt powers of federal courts); *United States v. U.S. Mine Workers of America*, 330 U.S. 258, 303-04 (1947) (approving civil contempt sanctions designed both "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained"); *United States v. Rue*, 819 F.2d 1488, 1495 (8th Cir. 1987) (citing *Mine Workers* in affirming contempt sanction of payment of opponent's attorneys' fees and costs plus daily fine).

## CONCLUSION

Nebraska Beef has no excuse for failing to pay the amount that is required by the Settlement Agreement that it signed. It is simply forcing Wells Fargo to incur further expense—and impinging on this Court's time—by requiring Wells Fargo to repair to the Court for assistance in getting Nebraska Beef to honor contractual obligations that it should be honoring without judicial intervention. Wells Fargo respectfully asks the Court to: 1) order Nebraska Beef to deliver to Wells Fargo a total of $118,722.55 within seven days after entry of the Court's order requiring it, and 2) order that any failure by Nebraska Beef to comply with the Court's order will constitute a contempt of Court that will be punishable by a fine to be set by the Court in its discretion, plus payment of the costs, expenses, and attorneys' fees that Wells Fargo incurred in bringing this motion and in any subsequent motion to enforce Nebraska Beef's obligations.

Dated: January 23, 2007

**FAEGRE & BENSON LLP**

s/ Charles F. Webber

Charles F. Webber (#215247)
Erik Girvan (#320079)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Attorneys for Defendant
Wells Fargo Bank, N.A.,
successor by merger to
Wells Fargo Business Credit, Inc.,
f/k/a Norwest Business Credit, Inc.

fb.us.1782968.01