**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Nebraska Beef Limited,

Plaintiff,

vs.

Wells Fargo Business Credit, Inc., f/k/a Norwest Business Credit, Inc.,

Defendant.

Civil No. 01-CV-2375 JNE/JGL

**DECLARATION OF CHARLES F. WEBBER IN SUPPORT OF WELLS FARGO's MOTION TO ENFORCE SETTLEMENT AGREEMENT**

I, Charles F. Webber, hereby declare the following:

1. I am a partner with the law firm of Faegre & Benson LLP in Minneapolis, Minnesota. Because of my position with Faegre & Benson and my representation of defendant in this case, I have personal knowledge of the facts set forth in this declaration.

2. On behalf of my client, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Business Credit, Inc., f/k/a Norwest Business Credit, Inc. ("Wells Fargo"), I attended a June 27, 2005 settlement conference before then-Chief Magistrate Judge Lebedoff. I believed at the conclusion of the conference that the parties had reached agreement on the terms of a settlement. One of the terms of the settlement was that the parties would stipulate that the Court could certify for immediate appeal under Fed. R. Civ. P. 54(b) the Court's January 20, 2004 Order granting summary judgment to Wells Fargo on all of Nebraska Beef's claims in this case, so that Nebraska Beef could pursue an immediate appeal without waiting for entry of judgment on Wells Fargo's counterclaim against Nebraska Beef. The parties also agreed that if Nebraska Beef's appeal was not successful, Nebraska Beef would pay a certain amount of money to Wells Fargo in exchange for Wells Fargo's dismissal of its counterclaim, which would finally dispose

of all of the claims in this case and allow the Court to close the case. The parties did not read the settlement terms into the record in June; the attorneys told Magistrate Judge Lebedoff that it was not necessary.

3. After the June 27 conference, I drafted a written settlement agreement incorporating the terms that I believed the parties had agreed to, and I sent that draft to Nebraska Beef's counsel, Mathew Meyer. Mr. Meyer subsequently told me that he did not share my understanding of the matters that were agreed to before Magistrate Judge Lebedoff, and that Nebraska Beef refused to approve Wells Fargo's draft settlement agreement.

4. After additional negotiation, the parties reached a new agreement. Many of the terms were the same as the parties had agreed to in June, including the provision for a stipulation to the Court entering a Rule 54(b) certification of its January 2004 summary judgment order in order that Nebraska Beef could pursue an immediate appeal of that order, and the provision that if Nebraska Beef's appeal was unsuccessful Nebraska Beef would pay money to Wells Fargo in exchange for dismissal of the pending counterclaim. I drafted a new Settlement Agreement and Mutual Release and associated exhibits ("Settlement Agreement") and sent them to Mr. Meyer on August 19, 2005, along with a request that he "confirm that this is acceptable." Attached hereto as Exhibit 1 is a true and correct copy of the e-mail "chain" between Mr. Meyer and me that includes the e-mail that I sent to Mr. Meyer on August 19, as well as his reply on August 26 and my response on the same date. Attached hereto as Exhibit 2 is a true and correct copy of the draft Settlement Agreement and Mutual Release that accompanied by August 19 e-mail to Mr. Meyer.

5. Several weeks ago I received a call from Court personnel inquiring about the status of the settlement. On the same, I contacted Mr. Meyer to ask about the delay in getting the

Settlement Agreement signed. Mr. Meyer said that the papers were on his client's desk, and that he would call his client to ask about the status. Mr. Meyer did not indicate that there was any disagreement about the terms of the Settlement Agreement or that there was any other problem that would prevent the settlement from being finalized. I never heard back from Mr. Meyer after that.

6. On October 11, I sent Mr. Meyer by facsimile and mail a letter asking for a signed Settlement Agreement by Friday, October 14, or Wells Fargo would bring the current motion. Attached hereto as Exhibit 3 is a true and correct copy of the letter that I sent to Mr. Meyer on October 11. I received no signed papers and no communication from Mr. Meyer by the end of the day on October 14.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 17th day of October, 2005, in Minneapolis, Minnesota.

s/Charles F. Webber
Charles F. Webber

M2:20748665.01